IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY AIGNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| vs. | ) |
| | ) Case No. 1:26-CV-09435 |
| KRG OSWEGO DOUGLASS, LLC, | ) |
| | ) |
| Defendant. | ) |

## <u>COMPLAINT</u>

COMES NOW, KIMBERLY AIGNER, by and through the undersigned counsel, and files

this, her Complaint against Defendant, KRG OSWEGO DOUGLASS, LLC, pursuant to the

Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA") and the ADA's Accessibility

Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this

Court as follows:

### <u>JURISDICTION</u>

1.     This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331

and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's

failure to remove physical barriers to access and violations of Title III of the ADA.

### <u>PARTIES</u>

2.     Plaintiff, KIMBERLY AIGNER (hereinafter "Plaintiff") is, and has been at all

times relevant to the instant matter, a natural person residing in Montgomery, Illinois (Kendall

County).

3.     Plaintiff is disabled as defined by the ADA.

1

4. Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

5. Plaintiff uses a wheelchair for mobility purposes.

6. In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA. Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7. Defendant, KRG OSWEGO DOUGLASS, LLC (hereinafter "KRG OSWEGO DOUGLASS, LLC"), is a foreign limited liability company that transacts business in the State of Illinois and within this judicial district.

8. Defendant, KRG OSWEGO DOUGLASS, LLC, may be properly served with process for service via its Registered Agent, to wit: c/o United Agent Group Inc., Registered Agent, 1320 Tower Rd. Schaumburg, IL 60173.

## FACTUAL ALLEGATIONS

9. On or about July 9, 2026, Plaintiff was a customer at "Sakamoto Japanese Grill and Sushi" a business located at 2984 US Route 34, Oswego, IL 60543 referenced herein as "Sakamoto Japanese Grill and Sushi". Attached is a receipt documenting Plaintiff's purchase. See Exhibit

1. Also attached is a photograph documenting Plaintiff's visit to the Property. See Exhibit 2.

10. Plaintiff lives 6 miles from the Property.

11. Given the close vicinity of the Property to the Plaintiff's residence, Plaintiff often travels by the Property.

12. Defendant, KRG OSWEGO DOUGLASS, LLC, is the owner or co-owner of the real property and improvements that Sakamoto Japanese Grill and Sushi is situated upon and is the subject of this action

13. Plaintiff's access to Sakamoto Japanese Grill and Sushi as well as another restaurant Pho Son, located 2984 US Route 34, Oswego, IL  60543, Kendall County Property Appraiser's property parcel number: 03-09-460-006 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of her disabilities, and she will be denied and/or limited in the future unless and until Defendant, KRG OSWEGO DOUGLASS, LLC, is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

14. Plaintiff has visited the Property twice before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months, likely sooner, after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer of Sakamoto Japanese Grill and Sushi, to be a new customer of Pho Son, to determine if and when the Property is made accessible and for Advocacy Purposes.

15. Plaintiff intends on revisiting the Property to purchase food and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose herself to the ongoing barriers to access and engage in a futile gesture of visiting the

3

public accommodation known to Plaintiff to have numerous and continuing barriers to access, as such, Plaintiff is deterred from returning to the Property as a customer until after the barriers to access are removed.

16. Plaintiff travelled to the Property twice before as a customer and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

17. Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and she would need to use an alternative accessible parking space in the future on her subsequent visit. As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

18. Plaintiff's inability to fully access the Property and the public accommodation within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an inquiry in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

19.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C.

§ 12101 *et seq*.

20.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

21.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii) provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

\* \* \* \* \*

(iv) invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

22. The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

23. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

24. The Property is a public accommodation and service establishment.

25. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

26. Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq*.; 28 C.F.R. § 36.508(a).

27. The Property must be, but is not, in compliance with the ADA and ADAAG.

28. Plaintiff has attempted to, and has to the extent possible, accessed the Property in her capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of her disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or

6

accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

29. Plaintiff intends to visit the Property in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of her disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit her access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30. Defendant, KRG OSWEGO DOUGLASS, LLC, has discriminated against Plaintiff (and others with disabilities) by denying her access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

31. Defendant, KRG OSWEGO DOUGLASS, LLC, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, KRG OSWEGO DOUGLASS, LLC, is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

32. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of

the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS**

(i) The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards. There are 67 total parking spaces, which requires a minimum of three accessible parking spaces, but there are only two accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

(ii) The two accessible parking spaces and associated access aisle have a running slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

(iii) One of the two accessible parking spaces is missing an identification sign in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

(iv) For the left accessible parking space, due to the placement of the nearest accessible ramp leading from this accessible parking space directly in front of another parking space, when a vehicle is parked in the parking space, there lacks adequate space for Plaintiff to utilize the accessible ramp. Also due to the barriers to access identified in (v) and (vi) below. The Property lacks an

8

accessible route from the left accessible parking space to the accessible entrances of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(v) Between Units 2980 and 2984, due to the presence of flower pots, the landing at the top of the accessible curb ramp does not have 36 (thirty-six) inch clear space in violation of Section 406.4 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the Property because the lack of a level landing would either completely prevent access or, at a minimum, cause Plaintiff to have to turn on sloped surface exposing her to dangerous cross-slopes risking tipping over.

(vi) Leading to Unit 2984, the surfaces of the accessible route have a cross-slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff. Moreover, this barrier would force Plaintiff to confront additional dangers causing increased anxiety and trepidation.

(vii) At Unit 2984, as a result of the barrier to access referenced in vi, the maneuvering clearance of this accessible entrance is not level (surface slope in excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to

use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

(viii) Due to the lack of an adequate policy of maintenance, the left accessible ramp leading from the left accessible parking space has a vertical rise at the top that is in excess of a ¼ of an inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

(ix) Due to the lack of an adequate policy of maintenance, there are openings in the ground surfaces of both accessible ramps with opening widths exceeding ½ inch which would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increasing the potential for Plaintiff's wheelchair to tip over in violation of Sections 302.3 and 405.4 of the 2010 ADAAG Standards. This barrier would potentially cause the wheel of Plaintiff's wheelchair to get stuck in the gap and increase the potential for Plaintiff's wheelchair to tip over and get injured. The danger is made even worse due to the fact the opening is on a ramp, a sloped surface, making the likelihood of tipping over even greater. When coupled with the lack of level turning space, this barrier is a very

10

frightening and dangerous barrier causing Plaintiff and others in wheelchairs anxiety and fright at the increased prospect of injury.

(x)     There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of Section 208.2.4 of the 2010 ADAAG standards and Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

(xi)    The landing at the top of the right accessible curb ramp in front of the access aisle to the right accessible parking space does not have 36 (thirty-six) inch clear space in violation of Section 406.4 of the 2010 ADAAG standards. This barrier to access would make it difficult and dangerous for Plaintiff to access the Property because the lack of a level landing would either completely prevent access or, at a minimum, cause Plaintiff to have to turn on sloped surface exposing her to dangerous cross-slopes risking tipping over.

(xii)   Leading to Unit 2970, the surfaces of the accessible route have a cross-slope in excess of 1:48, in violation of Section 403.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because excessive cross-slope along accessible routes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff. Moreover, this barrier would force Plaintiff to confront additional dangers causing increased anxiety and trepidation.

(xiii)  At Unit 2970, as a result of the barrier to access referenced in (x), the maneuvering clearance of this accessible entrance is not level (surface slope in

12

excess of 1:48) in violation of Section 404.2.4.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access this unit of the Property since it is often necessary for individuals in wheelchairs to need to use their hands to both wheel through the doorway and keep the door open with another hand. When the maneuvering clearance is not level, this ordinarily difficult process is made even more difficult by the inappropriately higher slope.

(xiv)   For the right accessible parking space, due to the barriers to access identified in (ix) and (x) above. The Property lacks an accessible route from the right accessible parking space to the accessible entrances of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

(xv)    Due to the barriers identified in (v), (vi), (x) and (xi), the surfaces of the accessible route lack a level turning space of at least a 60 inches in diameter circle or a 60 inch square minimum t-shaped space in violation of Section 304.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because if Plaintiff is forced to turn on a sloped surface this can cause the wheelchair to tip over and cause injury.

(xvi)   Inside Sakamoto Japanese Grill, the interior has surfaces leading to the restroom lacking a 36 (thirty-six) inch clear width, due to a policy of storing large bags of rice and a chair in the accessible route, in violation of Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for

12

Plaintiff to properly utilize public features at the Property because the width of Plaintiff's wheelchair would prevent passage through areas with a width less than 36 inches. This barrier would also cause anxiety and potential danger, because Plaintiff's fingers could get injured if they are snagged on a protrusion into the accessible route.

(xvii) Inside Sakamoto Japanese Grill, due to the policy of the operator/tenant as to where to place tables and chairs in the restaurant, the interior has surfaces leading to the restrooms lacking a 36 (thirty-six) inch clear width in violation of Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to properly utilize public features in the Property, increase the likelihood of Plaintiff scraping their hands on protruding objects and increasing the likelihood of embarrassment and ridicule for having to ask for assistance in a public setting due to their disability.

(xviii) Inside Sakamoto Japanese Grill, as a result of the barriers to access referenced in ix and x, the Property lacks an accessible route connecting the exterior of the Property to all accessible elements and features inside the Property in violation of Section 206.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access public features of the Property due to the lack of a safe accessible route leading from the exterior to interior spaces inside the Property.

(xix) Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

13

**SAKAMOTO JAPANESE GRILL RESTROOMS**

(xx)     There is a policy of storing items in front of and adjacent to the restroom door. As a result, the door to the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent items being stored, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

(xxi)     The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

(xxii)    The height of the sink exceeds the 34" maximum height from the finished floor in violation of Section 606.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

(xxiii)   Due to the presence of a supporting bar, the restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front. In order to properly utilize a sink, Plaintiff's legs must be able to be underneath

14

the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

(xxiv) The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

(xxv) The door exiting the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent sink, in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

33. The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

34. Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

35. According to the Kendall County Property Appraiser, the Property was built in 2002. As such, the removal of the barriers to access should be adjudicated under either the 2010 ADAAG Standards or the 1991 standards, and not the readily achievable standard.

36. Upon information and good faith belief, the Property has been altered since 2010. There have been multiple instances of the parking lot being resurfaced.

37. In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

38. Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm unless and until Defendant, KRG OSWEGO DOUGLASS, LLC, is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

39. Plaintiff's requested relief serves the public interest.

40. The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, KRG OSWEGO DOUGLASS, LLC.

41. Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, KRG OSWEGO DOUGLASS, LLC, pursuant to 42 U.S.C. §§ 12188 and 12205.

42. Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, KRG OSWEGO DOUGLASS, LLC, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a) That the Court find Defendant, KRG OSWEGO DOUGLASS, LLC, in violation of the ADA and ADAAG;

(b) That the Court issue a permanent injunction enjoining Defendant, KRG OSWEGO DOUGLASS, LLC, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, KRG OSWEGO DOUGLASS, LLC, to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: August 6, 2026                    Respectfully submitted,

                                        /s/  Douglas S. Schapiro
                                        Douglas S. Schapiro, Esq.
                                        State Bar No. 54538FL
                                        The Schapiro Law Group, P.L.
                                        7301-A W. Palmetto Park Rd., #100A
                                        Boca Raton, FL 33433
                                        Tel: (561) 807-7388
                                        Email: schapiro@schapirolawgroup.com

17